## SIEBERT v. NORTHPORT POINT COTTAGE OWNERS' ASSOCIATION.

### Decision of the Court.

1. Workmen's Compensation—Death of Claimant and Dependent.
   Award of workmen's compensation benefits to administrator of estate of claimant who died without dependents, from which an appeal had been taken but which had not been finally determined on the date of his death, is affirmed.

### Separate Opinion.

T. M. Kavanagh, Souris, and Adams, JJ.

2. Workmen's Compensation—Administrator of Deceased Claimant—Accrued Benefits.
   *The authority of the administrator of the estate of a deceased claimant for workmen's compensation benefits to collect such benefits, which had accrued prior to death, is not derived from the workmen's compensation act.*

3. Same—Questions Reviewable—Final Order of Workmen's Compensation Appeal Board.
   *Whether there need be a final order for payment of workmen's compensation benefits is the question presented by appellant employer in proceeding to continue proceeding to recover such*

References for Points in Headnotes

[1–3, 5, 6, 12] 58 Am Jur, Workmen's Compensation § 188.
[4] 58 Am Jur, Workmen's Compensation § 281 *et seq.*
[7] 58 Am Jur, Workmen's Compensation §§ 198, 255.
[8, 13, 16] 58 Am Jur, Workmen's Compensation § 577 *et seq.*
[9] 58 Am Jur, Workmen's Compensation § 579.
[10, 11] 58 Am Jur, Workmen's Compensation §§ 26, 31.
[14] 58 Am Jur, Workmen's Compensation § 526.
[15] 58 Am Jur, Workmen's Compensation § 454.
[17, 18] 50 Am Jur, Statutes §§ 375, 376.
[19] 20 Am Jur 2d, Courts §§ 233–236.

benefits by administrator of estate of claimant who had died, without dependents, the day before the workmen's compensation board made its determination to award compensation some 21 months after referee had decided the case and claim had arisen nearly 5 years prior to the board's determination.

4. SAME—TEST OF RIGHT TO COMPENSATION—INABILITY TO WORK.

The test of an injured employee's right to workmen's compensation is his inability, by reason of the accident, to work and earn wages in the employment at which he was engaged when injured.

5. SAME—COLLECTION BY PERSONAL REPRESENTATIVE.

Workmen's compensation benefits owing to an injured claimant, who died before the appeal from his award of benefits was decided by workmen's compensation appeal board, are collectible by his personal representative the same as unpaid wages would be.

6. SAME—SURVIVAL ACT.

Appellee's contention that the right of a personal representative of a deceased employee to continue the proceeding for collection of workmen's compensation benefits after death of the workman is accorded by the survival act held, without merit, since the survival act is found in the revised judicature act, a statute of general nature relating to organization and jurisdiction of the courts and matters of civil procedure and whose provisions, not being a part of the workmen's compensation act, are not applicable to proceeding for workmen's compensation (PA 1912 [1st Ex Sess], No 10, as amended; CLS 1961, § 600.2921).

7. SAME—PROXIMATE CAUSE—NOTICE—FINDINGS OF WORKMEN'S COMPENSATION APPEAL BOARD—EVIDENCE.

Findings of workmen's compensation appeal board that deceased employee had suffered a personal injury arising out of and in the course of his employment, which was causally related to his disablement from heart disease, and that notice had been timely given and claim timely made held, supported by competent evidence.

SEPARATE OPINION.

O'HARA, J.

8. WORKMEN'S COMPENSATION—ACCRUED BENEFITS—ABATEMENT.

Death of an injured employee terminates his disability but does not abate liability of the employer to make payment of benefits which had accrued during his lifetime.

9. SAME—DEATH—ADMINISTRATOR.

*The administrator of the estate of an injured employee who died from causes unrelated to the injury and who left no dependents would not be entitled to death benefits.*

10. COURTS—CONSTRUCTION OF STATUTES—CONSTRUCTION BY ADMINISTRATIVE AGENCY.

*Reconciliation of seemingly inconsistent opinions of the Supreme Court, as presented by workmen's compensation appeal board, is approved on appeal rather than participation in overruling such cases construing the workmen's compensation act.*

11. STATUTES—CONSTRUCTION BY ADMINISTRATIVE AGENCY.

*The construction of a statute by agency charged with its administration is not binding on the Supreme Court but is accorded weight.*

DISSENTING OPINION.

DETHMERS, C. J., and KELLY, J.

12. APPEAL AND ERROR—QUESTIONS REVIEWABLE—WORKMEN'S COMPENSATION—EXECUTORS AND ADMINISTRATORS.

*Determination that plaintiff administrator of estate of claimant who had died without dependents had no right to collect benefits under the workmen's compensation act for others than the beneficiaries mentioned in the act made it unnecessary to determine whether evidence supported award by workmen's compensation appeal board or whether sufficient notice of injury had been given employer.*

13. WORKMEN'S COMPENSATION—DEATH BEFORE FINAL AWARD BY WORKMEN'S COMPENSATION APPEAL BOARD—ABATEMENT.

*Death of injured employee without dependents before final award of the workmen's compensation appeal board abated right to claim workmen's compensation benefit rights by the personal representative of the employee's estate and gave the representative no right to collect benefits for others than the beneficiaries named in the workmen's compensation act (CL 1948, § 412.4).*

14. SAME—HEARING REFEREE'S AWARD—APPEAL—TIME.

*Ten days must expire without appeal from an award in proceedings to recover workmen's compensation in order to make the hearing referee's award a final award (CL 1948, § 413.8).*

15. SAME—HEARING REFEREE.

> *An appeal from a hearing referee to the workmen's compensation appeal board is a de novo hearing before the board.*

16. SAME—DEATH OF INJURED EMPLOYEE WITHOUT DEPENDENTS—SURVIVAL OF CLAIM—STATUTES.

> *The revised judicature act does not apply to workmen's compensation proceedings so as to effect survival of claim for workmen's compensation benefits upon death of injured employee without dependents prior to final determination by the workmen's compensation appeal board of his right to compensation (CLS 1961, §§ 600.151, 600.2921).*

17. STATUTES—CONSTRUCTION—HARDSHIP.

> *The fact that a plain, unambiguous statute may, in certain instances, work great hardship is an argument that should be addressed to the legislature rather than to the court.*

18. SAME—CONSTRUCTION—COURTS.

> *It is the duty of a court to interpret a statute as found, the wisdom of the provision in question in the form enacted being a matter of legislative responsibility, since a court may not legislate.*

DISSENTING OPINION.

BLACK, J.

19. COURTS—PROSPECTIVE OVERRULING OF PRECEDENTS.

> *Prospective overruling of precedent is necessary in order that people meaning to live under law may do so as the law legally has been made known to them.*

Appeal from Workmen's Compensation Appeal Board. Submitted October 6, 1966. (Calendar No. 6, Docket No. 51,312.) Decided March 7, 1967.

Fred Siebert, administrator of the estate of Magnus Larson, continues in proceedings instituted by the deceased on a claim against Northport Point Cottage Owners' Association, employer, and Hartford Accident & Indemnity Company, insurer, for compensation following heart attack. Award granting benefits appealed after death of claimant, and

cause remanded to appeal board for further consideration. Award granted to administrator. Defendants appeal. Affirmed.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley (Jerry S. McCroskey, of counsel), for plaintiff.*

*Charles H. Menmuir, for defendants.*

ADAMS, J. Magnus Larson committed suicide one day before his case was decided by the workmen's compensation appeal board. His claim arose on September 28, 1959, and notice was given to the employer on September 19, 1960. It was decided by the referee on November 6, 1962. Review demanded by the defendants was completed by the board of appeals on August 18, 1964. Throughout this time Larson's claim was increasing week by week. When he gave notice, his claim amounted to $1,673.55. When affirmed by the appeal board, it amounted to $8,396.13.

It is maintained that no matter how long the delay in deciding Larson's claim, no matter how many weeks of benefits had accrued before decision by the appeal board, all that was necessary to wipe out his rights was for him to die. Had he lived two more days, there is no question but that his estate could assert and collect what was due him.

### 1.

Defendants assert that benefits under the workmen's compensation law are personal rights belonging to the injured employee and his dependents and since the workmen's compensation act did not contain a provision for the prosecution of a claim by

an administrator, Larson's administrator may not prosecute one.

In *Stetu* v. *Ford Motor Co.*, 277 Mich 468, *Houg* v. *Ford Motor Co.*, 288 Mich 478, *Brandner* v. *Myers Funeral Home*, 330 Mich 392, and *Adams* v. *Sebewaing Brewing Company*, 347 Mich 265, the rule was laid down that where an award of compensation has been made prior to the employee's death an administrator may collect upon the claim. The Court, in *Houg*, said (pp 481, 482):

"Plaintiff's death terminated defendant's liability for the remainder of such payments which he would have received in case he had lived (CL 1929, § 8428 [Stat Ann § 17.162]), but did not discharge defendant's liability *for the payments which had accrued* under the order of the department of labor and industry prior to his death. Defendant remained liable therefor and the amounts which had accrued in plaintiff's lifetime are collectible by his personal representative. *Stetu* v. *Ford Motor Co.*, 277 Mich 468." (Emphasis supplied.)

It will be seen from the above that the main reason the administrator is given the right to pursue the claim is because "the payments * * * had accrued." No authorization of such right in the act was deemed necessary. If an administrator may pursue a claim which has accrued under an order of the workmen's compensation commission, why should he not be allowed to pursue an identical claim upon death of the claimant before a final order has been entered? The authority of an administrator not being derived from the act, it must be concluded it is the same in one case as in the other.

## 2.

It is asserted there can be no final order until the decision of the appeal board because this Court

has held that a hearing before the appeal board is *de novo. Fawley* v. *Doehler-Jarvis Division of National Lead Company,* 342 Mich 100.

The appeal board, in its opinion in this present case, stated:

"In these days when the case load of the appeal board and the hearing referees are numbered in the thousands and with the time necessary for the determination of right under the procedure section of the statute being measured in years, it only adds insult to injury to tell the estate's administrator that he has no right to proceed except in those cases where final awards have been entered by the tribunal established for resolving the disputes which arose. An unscrupulous employer knowing the time consumed in determining the rights of the parties, could well decide that it is cheaper to let the injured die than to pay him or attempt to save his life when there are no dependents within the meaning of the compensation statute."

The question is not whether there can be no final order until decision by the appeal board, but whether there need be such a final order.

In *Schlickenmayer* v. *City of Highland Park* (1931), 253 Mich 265, this Court held that a widow's claim for death benefits arising out of her husband's death in the course of his employment was a new and original liability of the employer and her right to compensation was not derivative from the husband's rights against his employer for the injury causing death. While not necessary to decision in that case, the Court said (p 267):

"It [the widow's right to compensation] did not pass to plaintiff from him upon his death,—it was not part of his estate. It did not come to plaintiff as an heir. * * * Upon the death of decedent his right to be awarded compensation ceased." (Bracketed material added.)

In *Munson v. Christie* (1935), 270 Mich 94, which involved a claim by the widow and administratrix for an award for medical services that should have been paid by the employer during the lifetime of the employee, the Court granted the benefits but by way of dictum stated (pp 100, 101):

"It is settled that the rights and benefits afforded the employee by this act do not survive to his heirs as such. And we can agree with apellants that the act contains no provision for prosecution of a proceeding before the commission by a representative of the deceased or of his estate, and therefore such representative cannot petition for an award."

In *Stone v. Smith* (1936), 275 Mich 344, the question of abatement of weekly benefits was directly considered. An award of compensation for total disability had been made by the deputy commissioner to the employee and was pending on appeal when the employee died. Notice of death was given by Mildred G. Stone in which it was recited that she was the dependent widow and special administratrix of the estate of George E. Stone, the deceased employee, and that death resulted from the injury. The notice requested confirmation of the award of compensation by the deputy commissioner to Stone and that the same be allowed at the rate of $18 a week for the period from September 23, 1933, to the date of death, November 9, 1934. The department entered an order dismissing the proceeding as to George E. Stone but treated the notice as also being an application for adjustment of claim filed in behalf of dependents which it referred to a deputy commissioner for the taking of additional testimony and the determination of rights. This Court upheld the order of the department, pointing out that if the employer had liability it would only be for death benefits to dependents un-

der the act which makes such compensation payable from the date of the injury, and that there could not be two recoveries for the same injury covering the same time—one to the injured employee and the other to his dependents. This Court held (p 351):

"His death amounted to an abatement of that proceeding [the employee's claim]. After the death of the injured employee, the employer is liable, if at all, under the provisions of CL 1929, § 8421 [part 2, § 5] and the other sections of the statute therein referred to [compensation for death benefits to dependents]." (Bracketed material added.)

The holding of *Stone* was followed in *Holtz* v. *B. F. Keith Detroit Corp.* (1936), 276 Mich 72. It was further clarified in *Mooney* v. *Copper Range R. Company,* 318 Mich 120, where the Court said (p 125):

"In the case at bar the claim for compensation was abated only so far as the injured employee was concerned. The proceeding was still pending to determine the rights of the dependent. The purpose in each case was to determine whether the injured employee had suffered a compensable injury and, if so, to grant an award to the injured employee or his dependents. The evidence necessary to establish a compensable injury would of necessity be the same in each case. The term 'abatement' as used in the *Stone* and *Holtz Cases* does not mean that the dependent must begin a new proceeding. Such dependent may continue the original claim for compensation by the substitution of a new party claimant and continue the proceedings for the purpose of determining the rights of such dependent."

The key question was stated by the appeal board as follows:

"Does the fact that the legislature enacted a law which gave the injured employee a right to be compensated for his injury and then having also enacted a provision which gave his dependents a right to certain compensation when the injury is the proximate cause of death foreclose an administrator of the deceased's estate from maintaining an action to secure that which did accrue during the lifetime of the employee where death from causes unrelated to the injury intervened before such employee could secure a determination of his rights?"

In tracing the development of the law, the appeal board analyzed the question as follows:

"When the statute was first enacted in 1912, the legislature did provide as a part of the death benefit accruing to the dependents certain compensation which could have accrued during the compensable period during the lifetime of the employee when and if 'death results from the injury.' This provision read as follows:

"(PA 1912 [1st Ex Sess], No 10, part 2, § 5) 'When weekly payments have been made to an injured employee before his death the compensation to dependents shall begin from the date of last such payments, but shall not continue more than 300 weeks from the date of the injury.'

"The above-noted provision could well account for some of the seemingly inconsistent decisions which have been entered. It could also account for the language used by the legislature which requires that in the case of death from the injury compensation shall be paid to dependents. This provision was, however, stricken from the statute by PA 1943, No 245.

"When we keep in mind that the last-noted provision was there at the time the language of part 2, § 12 was first enacted, we can better understand what was being provided in section 12. Said section

(CL 1948, § 412.12 [Stat Ann 1960 Rev § 17.162])
now provides as follows:

" 'The death of the injured employee prior to the
expiration of the period within which he would re-
ceive such weekly payments shall be deemed to end
such disability, and all liability for the remainder of
such payments which he would have received in case
he had lived shall be terminated, but the employer
shall thereupon be liable for the following death
benefits in lieu of any further disability indemnity.

" 'If the injury so received by such employee was
the proximate cause of his death, and such deceased
employee leaves dependents, as hereinbefore speci-
fied, wholly or partially dependent on him for sup-
port, the death benefit shall be a sum sufficient, when
added to the indemnity which shall at the time of
death have been paid or become payable under the
provisions of this act to such deceased employee, to
make the total compensation for the injury and
death exclusive of medical, surgical and hospital
services and medicines furnished as provided in sec-
tion 4 hereof, equal to the full amount which such
dependents would have been entitled to receive un-
der the provisions of section 5 hereof, in case the in-
jury had resulted in immediate death, and such bene-
fits shall be payable in the same manner as they
would be payable under the provisions of section 5
had the injury resulted in immediate death.'

"It should be noted that the above quoted section
contains two separate paragraphs. One terminates
'disability' and liability for 'remainder' of compen-
sable period; the other establishes a death benefit
where the injury was the 'proximate cause' of death
and the employee leaves dependents as defined. It
is here worthy of further emphasis to note that the
above-quoted section does not provide that death
ends liability and abates the claim. It provides only
that death from any cause 'be deemed to end such
disability,' and the 'remainder' of such payments
which would have been payable had the employee
lived are terminated. We cannot construe the word

'disability' as being synonymous with liability, nor is the word 'remainder' synonymous with the word 'accrued.'

"Where the injury is the 'proximate cause' of death and 'the deceased employee leaves dependents,' the statute provides that the dependents shall be compensated as if death had been immediate. The amounts which the statute provides as a death benefit to those dependent is a sum sufficient when added to the indemnity which shall at time of death [have?] been paid 'or become payable' to make the total compensation for the injury and death equal to the amount which would have been payable if the injury had caused immediate death. We cannot construe such provision as being a legislative directive that the claim for that which had accrued during the lifetime of the employee abates if the death was unrelated to the injury.

"It is quite evident that section 12 deems 'disability' to have ceased when death occurs from any cause and it does terminate liability for the payment of the 'remainder' of compensation which might have accrued if the employee had lived during the total compensable period. The language used by the legislature in section 12 was necessary because section 10 had deemed certain type injuries to have caused 'disability' for specified periods. This presumption of disability found in section 10 immediately preceding section 12 could well have extended liability beyond the date of death without the above provisions found in section 12. After stating that 'disability' ceased on the date of death from any cause, the legislature did then enact in this section the death benefit equal to that payable where death was immediate 'if' the injury was the 'proximate cause' of the death. With the exception that it did terminate the period of disability, this section did nothing whatsoever to the rights of the deceased or the rights of the administrator of his estate where death was unrelated to the injury or where the employee left no dependents wholly or

partially dependent upon him. *If death was not related to the injury, it is apparent that a decedent's administrator has no right to death benefits. However, the provisions of section 12 did not abate the administrator's right to that which accrued to the employee during his lifetime."* (Emphasis added.)

Without recognizing the significance of the sections of the workmen's compensation act applicable to dependents in effect at the time of the *Stone* and *Holtz Cases,* this Court announced in *Hoffman v. Parker Monument Co.* (1939), 290 Mich 394, 395, where the employee died from a disability due to occupational disease before any award had been made and a daughter sought to continue the claim as executrix and purported assignee but not as a dependent, "We have repeatedly held that the workmen's compensation act contains no provision for continuing the prosecution of a claim by a personal representative of a deceased workman," citing *Schlickenmayer, Munson* and *Stone.*

In *Nacey* v. *Utley* (1940), 295 Mich 266, 270, it was said:

"The case here stands solely on the petition of the plaintiff, now deceased, on which no compensation had yet been paid or finally awarded at the time of his death. *The rights, if any, of a dependent or a personal representative of the deceased are not before the department or this Court in the instant case.* * * *

"The liability of the employer, *if the employee's death results from a compensable injury,* is to the employee's dependents. The employee's death prior to the final order of the department of labor and industry awarding compensation ends the employer's liability to pay compensation to the employee and his proceeding to recover the same becomes abated thereupon. *Stone* v. *Smith,* 275 Mich 344."

Clearly, the Court in *Nacey* v. *Utley* never reached the question of the right of a personal representative to continue with the employee's claim.

In *Benton Harbor Malleable Industries* v. *General Motors Corporation*, 358 Mich 684, Justice Kelly followed the holding of the *Stone Case* in concluding that after the death of the employee any proceedings before the referee should be for the purpose of determining the rights of the dependent to compensation under part 2, § 5 of the workmen's compensation act.

The foregoing analysis serves to show that the cases of *Schlickenmayer, Munson, Stone, Holtz, Utley* and *Benton Harbor Malleable* are distinguishable on their facts from the instant case and are not controlling here. Any dictum to the contrary appearing in those cases is no longer to be followed and is hereby disapproved. To the extent that the holding in *Hoffman* v. *Parker Monument Co., supra,* is in conflict with the views herein expressed, such holding is hereby overruled.

This Court stands committed to the rule that:

"The test of an injured employee's right to compensation is his inability by reason of the accident to work and earn wages in the employment at which he was engaged when injured." *Levanen* v. *Seneca Copper Corporation,* 227 Mich 592, 601.

See, also, *Millaley* v. *City of Grand Rapids,* 231 Mich 10; *Smith* v. *Pontiac Motor Car Co.,* 277 Mich 652; *Thomas* v. *Continental Motors Corp.,* 315 Mich 27; *Dunavant* v. *General Motors Corporation,* 325 Mich 482.

The proceedings in this case culminating in the order of the appeal board, supported by its opinion on review on remand from this Court, establish that Magnus Larson fully met this test. There is no

sound reason why the compensation owing to him should not be collectible by his personal representative, the same as unpaid wages would be.

## 3.

I would dispose of counsel's contention that section 2921 of chapter 29 of the revised judicature act of 1961 (CLS 1961, § 600.2921 [Stat Ann 1962 Rev § 27A.2921]) applies by saying that the revised judicature act is a statute of general nature relating to organization and jurisdiction of the courts and matters of civil procedure. It is not a part of the workmen's compensation act and upon the authority of *Autio* v. *Proksch Construction Company,* 377 Mich 517, *Martin* v. *White Pine Copper Company,* 378 Mich 37, and *Pevarnic* v. *Northwestern Leather Company,* 378 Mich 48, its provisions are not applicable to proceedings for workmen's compensation.

## 4.

Finally we are asked to determine whether the appeal board's finding that Magnus Larson suffered a personal injury arising out of and in the course of his employment which was causally related to his disablement from heart disease was supported by some competent evidence and also whether the appeal board's finding that notice was timely given and claim was timely made was supported by competent evidence. We have examined the record and find that the findings of the appeal board as to both questions are supported by competent evidence.

I would affirm the order of the appeal board with costs to appellee.

T. M. KAVANAGH and SOURIS, JJ., concurred with ADAMS, J.

O'HARA, J. (*concurring in affirmance*).

I concur in the result reached by Mr. Justice ADAMS for the reasons set forth in the opinion of the appeal board which is quoted in Justice ADAMS' opinion. Since the appeal board did not, by its opinion, purport to overrule any judicial precedent, I do not discuss that aspect of Mr. Justice BLACK's opinion. I hold rather that the well-reasoned opinion of the appeal board reconciled what it denominated the "seemingly inconsistent opinions" heretofore handed down.

It is axiomatic that while we are not bound by the construction of a statute made by the tribunal charged with the responsibility of its administration, we accord weight thereto. See *Wyandotte Savings Bank* v. *State Banking Commissioner*, 347 Mich 33, 48, and the authorities there cited.

I vote to affirm.

KELLY, J. (*dissenting*). In this appeal defendants claim the workmen's compensation appeal board erred in answering "yes" to the following three questions:

"1.

"Was workmen's compensation award for disability following coronary occlusion suffered by 66-year old semi-retired worker in advanced stages of coronary arteriosclerosis supported by evidence and in accordance with law?"

"2.

"Was employee's notice of injury and claim for compensation timely where no notice was given or claim made for 11 months after alleged injury, the employer in the meantime having information only that employee suffered chest pains while at work in

the afternoon and a heart attack in the evening of
the same day after he had gone to bed?"

## "3.

"Upon the death of Magnus Larson without de-
pendents and before final award of the workmen's
compensation appeal board, did his pending claim.
and any benefit rights thereunder pass to the admin-
istrator with will annexed of his estate?"

We agree with the defendants that the board erred
in regard to the third question and, therefore, deem
it unnecessary to consider questions one and two.

The first paragraph of defendants' brief concisely
sets forth their contention *in re* question three as
follows:

"The legal profession has understood, from a line
of decisions beginning with *Stone* v. *Smith* (1936),
275 Mich 344 and continuing through *Benton Har-
bor Malleable Industries* v. *General Motors Corpo-
ration* (1960), 358 Mich 684, that the death of a
compensation claimant prior to final award by the
appeal board terminated the proceedings and that
further proceedings depended upon there being de-
pendents of the deceased employee entitled to claim
compensation. The other cases so holding were
*Holtz* v. *B. F. Keith Detroit Corp.*, 276 Mich 72;
*Nacey* v. *Utley*, 295 Mich 266. The four cited cases
were decided without dissent.

"The appeal board by its decision in this case of
Larson has overruled all these previous cases and
has done this retrospectively, together with the im-
position of interest. We believe that if any changes
in the law are to be made, such changes properly are
for consideration and adoption by the legislature."

Appellee's answer and request for reconsideration
by this Court of previous opinions is as follows:

⁝ "It is clear, if we look uncritically at the decisions of the Michigan Supreme Court decided in the years 1931 through 1956, that the plaintiff-administrator's claim for the workmen's compensation benefits due Magnus Larson would not succeed, his death having occurred the day before the entry of the appeal board order affirming his right to compensation and medical expense. In order to appreciate the full import of these decisions as well as the rationale behind them, however, it appears to us to be worthwhile to examine them in detail."

⁝ After commenting on these cases,[1] appellee states:

"In reviewing the cases from *Schlickenmayer* to *Sebewaing* we see that the Court has from time to time advanced three reasons for the doctrine of abatement:

"1. There is no specific provision in the act authorizing anyone to appear before the department and prosecute a claim other than the employee and his dependents. *Munson.*

"2. That the provision terminating liability for 'the remainder of such payments which he would have received in case he had lived' upon death prevent survival. *Stone.*

"3. That there is no specific provision in the workmen's compensation act for the survival of the cause of action. *Schlickenmayer.*

"Reason No. 1, that an administrator may not be a claimant under the act is effectively laid to rest by *Stetu, Houg, Brandner, Adams,* in each of which the substitution of the administrator was allowed and he was allowed to continue the proceedings in his representative capacity.

---

[1] *Schlickenmayer* v. *City of Highland Park* (1931), 253 Mich 265; *Munson* v. *Christie* (1935), 270 Mich 94; *Stone* v. *Smith* (1936), 275 Mich 344; *Holtz* v. *B. F. Keith Detroit Corp.* (1936), 276 Mich 72; *Stetu* v. *Ford Motor Co.* (1936), 277 Mich 468; *Houg* v. *Ford Motor Co.* (1939), 288 Mich 478; *Hoffman* v. *Parker Monument Co.* (1939), 290 Mich 394; *Nacey* v. *Utley* (1940), 295 Mich 266; *Brandner* v. *Myers Funeral Home* (1951), 330 Mich 392; *Adams* v. *Sebewaing Brewing Co.* (1956), 347 Mich 265.

"Reason No. 2, the statutory provision on the termination of liability was disposed of in *Houg,* wherein it was pointed out that the provision only refers to the *remainder* of the weekly benefits accruing *after* death."

*Stetu, Houg, Brandner* and *Adams* present an entirely different problem than the appeal in this case because in each of those cases the administrator "was allowed to continue the proceedings in his representative capacity" because the referee's award had not been appealed, or had been affirmed by the appeal board's decision prior to the employee's death. In this appeal we only have the referee's award prior to Mr. Larson's death.

Ten days must expire without appeal in order to make the hearing referee's award a final award.[2] An appeal from the referee's award was taken in the present case. We made it clear in *Fawley* v. *Doehler-Jarvis Division of National Lead Co.,* 342 Mich 100, that appeal made it a *de novo* hearing when we said (pp 101, 102):

"We have heretofore indicated in *Margenovitch* v. *Newport Mining Co.,* 213 Mich 272, and in *Basner* v. *Defoe Shipbuilding Co.,* 319 Mich 67, as well as in *Thompson* v. *Continental Motors Corp.,* 320 Mich 219, that the hearing before the commission on appeal from an award by the deputy is a *de novo* hearing. There have been many changes in the statute since the *Margenovitch Case,* but the 3 decisions quoted may be considered as indicating the nature of the hearing on appeal in workmen's compensation cases."

In regard to reason No. 3 "that there is no specific provision in the workmen's compensation act for the survival of the cause of action," appellee states that "there is presently a statute, RJA, which applies to

---

[2] CL 1948, § 413.8 (Stat Ann 1960 Rev § 17.182).

the workmen's compensation act which specifically allows survival of this action or claim, overruling reason No. 3." Appellee refers to the revised judicature act of 1961, and particularly to section 2921 of chapter 29[3] and section 151 of chapter 1[4] thereof.

The revised judicature act does not apply to workmen's compensation as is evidenced by the title of the act, which reads in part:

"An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts; * * * the forms and attributes of civil claims and actions; the time within which civil actions and proceedings may be brought in said courts."

The words upon which appellee relies in regard to "judicial power," which he claims include "any other agencies," were eliminated by the 1963 legislature by the enactment of PA 1963 (2d Ex Sess), No 18.[5]

Section 12 of part 2 of the workmen's compensation act (CL 1948, § 412.12 [Stat Ann 1960 Rev § 17.162]) provided for payments to dependents after the employee's death "if the injury so received

---

[3] "All actions and claims survive death. Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to the next section. If an action is pending at the time of death the claims may be amended to bring it under the next section. A failure to so amend will amount to a waiver of the claim for additional damages resulting from death." CLS 1961, § 600.2921 (Stat Ann 1962 Rev § 27A.2921).

[4] "The judicial power is vested in a single court system consisting of the supreme court, circuit courts, probate courts, justices of the peace, superior court, municipal courts, common pleas courts, recorder's courts, circuit court commissioners, and any other agencies created by the legislature which exercise judicial power." CLS 1961, § 600.151 (Stat Ann 1962 Rev § 27A.151).

[5] "The judicial power of the state is vested exclusively in 1 court of justice which shall be divided into 1 supreme court, 1 court of appeals, 1 trial court of general jurisdiction known as the circuit court, 1 probate court, and courts of limited jurisdiction created by the legislature." CLS 1961, § 600.151, as amended by PA 1963 (2d Ex Sess), No 18 (Stat Ann 1965 Cum Supp § 27A.151).

by such employee was the proximate cause of his death."

The 1965 legislature, by PA 1965, No 230, added a provision to the above section providing that the dependents shall receive the benefits even though "the claimant dies from a cause unrelated to his injury."

It is presumed that the legislature was aware of our previous decisions[6] when it added the 1965 provision. There is nothing in this 1965 amendment that in any way discloses displeasure with, or repudiation of our previous decisions, and we quote with approval defendants' statement that:

"This [1965] amendment, we believe, may be considered a restatement by the legislature of its expressed intent that only dependents have a right to benefits following the death of an employee entitled to benefits. The amendment does not provide for the distribution of benefits to heirs, legatees or creditors, other than those creditors provided for in part 2, § 4, of the act (CL 1948, § 412.4, Stat Ann 1960 Rev § 17.154).[7] The amendment does not give the plaintiff in this proceeding what he seeks, for it does not give the administrator the right to collect benefits for the estate. The administrator, under the amendment, becomes only a substituted plaintiff for the purpose of continuing the proceeding. He does not collect the benefits which are paid only to the beneficiaries named in the act. He is given no right under the amendment to collect benefits or to channel such benefits to heirs or legatees."

Appellee submits to this Court the question: "Is abatement of benefits sound public policy?"

---

[6] *Jeruzal* v. *Wayne County Drain Commissioner* (1957), 350 Mich 527; *Evans* v. *Ross* (1944), 309 Mich 149; *In re Chamberlain's Estate* (1941), 298 Mich 278; *People* v. *Powell* (1937), 280 Mich 699 (111 ALR 721).

[7] Amended by PA 1965, No 44.—Reporter.

On National and State levels the limitation of the courts' right to pass upon matters of policy has been established, and in this State our Court has spoken forcefully and clearly on that subject. I quote from two of our many decisions, namely: *City of Lansing* v. *Township of Lansing* (1959), 356 Mich 641:

"The fact that a plain, unambiguous statute may, in certain instances, work great hardship is an argument that should be addressed to the legislature rather than to the court." (Syllabus 7.)

and *Melia* v. *Employment Security Commission* (1956), 346 Mich 544:

"It is the duty of a court to interpret a statute as found, the wisdom of the provision in question in the form enacted being a matter of legislative responsibility, since a court may not legislate." (Syllabus 1.)

The August 16, 1965, order of the appeal board affirming with modification its order of August 18, 1964, should be reversed.

Dethmers, C. J., concurred with Kelly, J.

Black, J. (*dissenting*). Continuously since *Williams* v. *City of Detroit*, 364 Mich 231, 282–290, came to initial consideration in 1960, the undersigned has tried to interest other Justices in regular employment of the principle that, when overrulement of a standing succession of unanimous decisions is brought to necessitous consideration, the Court should proceed, if at all, as Mr. Justice Cardozo proposed shortly before he was sworn in as an associate justice of the Supreme Court, that is, by action of *prospective* nature. See the Justice's address of January 22, 1932; Vol 55, Report of New York State

Bar Association, 262, 295–297 (quoted *post*).    None-
theless, broken only by 1960 *Parker* v. *Port Huron
Hospital,* 361 Mich 1, 26–28; the separate opinion
Justices O'Hara and Kavanagh indorsed for 1965
*Myers* v. *Genesee County Auditor,* 375 Mich 1, 11,
and Justice O'Hara's separate opinion of 1965
*Mosier* v. *Carney,* 376 Mich 532, 607, the continued
silence of most members of the Court suggests mark-
edly that they do not realize the need for due judi-
cial care to avoid the outright *manufacture,* by gross
judicial negligence, of no end of civil litigation and
appeals by convicts for process that simply was not
due them—"under law"—at the time of conviction.[1]

Not so elsewhere, however.    See *Linkletter* v.
*Walker* (1965), 381 US 618 (85 S Ct 1731, 14 L ed
2d 601); *Tehan* v. *United States, ex rel. Shott* (1966),
382 US 406 (86 S Ct 459, 15 L ed 2d 453); and *John-
son* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772,
16 L ed 2d 882).    The beneficial principle of prospec-
tive overrulement is simply a law of compulsive ne-
cessity born of the needs of a people meaning to live
"under law" as law legally has been made known to
them; *not law they must guess beforehand may come
to enactment* by a then unknown coterie of subse-
quently elevated Justices.    Nowadays, in our State,
it is more than difficult for office lawyers, as well as
trial lawyers and trial judges, to estimate before-
hand just what tack or tacks a presently seated
majority of Justices will take with respect to settled
previous decisions, and there we find the prime
cause of that serious trouble in which our "one
court of justice" finds itself.    Dependable precedent?
Why there is none.

*Parker,* mentioned above, was a decision in which
the writer did not participate.    In that case Justice

[1] See Justice O'Hara's separate opinion of *In re Palmer,* 371
Mich 656, 666, 667, concurring with 5 other Justices in the result of
that case.

Kavanagh, supported by Justice Souris and 2 other since-departed Brethren, referred first to the *Sunburst Case* (287 US 358) and then proceeded to select for application, from *Griffin* v. *Illinois,* 351 US 12, 25, 26, the separate views of Justice Frankfurter. That there may be no misunderstanding as regards words then employed, the exact phrases Justices Kavanagh and Souris indorsed for *Parker* appear below (*Parker* at 26, 27):

"However, we believe the following statement of Justice Frankfurter concurring in *Griffin* v. *Illinois,* 351 US 12, 25, 26 (76 S Ct 585, 100 L ed 891, 55 ALR 2d 1055), is peculiarly applicable to the instant case:

" 'Candor compels acknowledgment that the decision rendered today is a new ruling. \* \* \* It is much more conducive to law's self-respect to recognize candidly the considerations that give prospective content to a new pronouncement of law. That this is consonant with the spirit of our law and justified by those considerations of reason which should dominate the law, has been luminously expounded by Mr. Justice Cardozo, shortly before he came here and in an opinion which he wrote for the court. See Address of Chief Judge Cardozo, 55 Report of New York State Bar Association, 263, 294 *et seq.,* and *Great Northern R. Co.* v. *Sunburst Oil & Refining Co.,* 287 US 358, 363–366 (53 S Ct 145, 77 L ed 360, 85 ALR 254). Such a molding of law, by way of adjudication, is peculiarly applicable to the problem at hand. The rule of law announced this day should be delimited as indicated.' "

As for the merit of today's specific criticism of *Stone* v. *Smith,* 275 Mich 344, *Hoffman* v. *Parker Monument Co.,* 290 Mich 394 and the offspring they have spawned (our error of reliance upon *Stone,* in *Benton Harbor Malleable Industries* v. *General Motors Corporation,* 358 Mich 684, 688, included), there

is no contest. The appeal board's unanimous opinion on remand, entered below August 16, 1965, sets forth unanswerable reasons for declaring openly that *Stone* and *Hoffman* each exhibited a *colossus lapsus*. To those reasons I would add this thought:

When the Court in *Stone* and *Hoffman* depended for decision upon its declaration that the statute included no authority for continuity of administrative consideration and determination of a deceased employee's previously filed claim, the Justices must have overlooked then section 16 of "Part 3—Procedure." At the time of handing down of *Stone* and *Hoffman* said section 16 read (CL 1929, § 8455):

"All questions arising under this act, if not settled by agreement by the parties interested therein, *shall,* except as otherwise herein provided, be determined by the industrial accident board."[2]

There being nothing "otherwise herein provided" in the workmen's compensation law, this section necessarily *directed* administrative determination, on behalf of the respective personal representatives of claimants Stone and Inch (the latter in *Hoffman*), of that which the Court in *Stone* and *Hoffman* said

---

[2] Since 1943 this section has read (CL 1948, § 413.16 [Stat Ann 1960 Rev § 17.190]): "All questions arising under this act shall be determined by the compensation commission."

Also, since 1943, section 6 of part 3 has read (CL 1948, § 413.6 [Stat Ann 1960 Rev § 17.180]):

"Sec. 6. Any controversy concerning compensation shall be submitted to the compensation commission. Neither the payment of compensation nor the accepting of the same by the employee or his dependents, nor the signing of receipts therefor, shall be considered as a determination of the rights of the parties under this act."

See, also, the recent amendment of section 12 of part 2 (CL 1948 § 412.12) made by PA 1965, No 230. The amendment destroyed prospectively the "abatement" rule of *Stone* and *Hoffman* and their subsequent kindred; making provision however for payment of compensation accruing before the employee's death, *not to his personal representative* but to "the same beneficiaries and in the same amounts as would have been payable if the employee had suffered a compensable injury resulting in death" (Stat Ann 1965 Cum Supp § 17.162).

could not be done within the structure of the workmen's compensation law. Further, then section 13 of said part 3, consistently with section 16 as quoted, authorized circuit court suit upon "the decision of such industrial accident board * * * providing for payment of compensation under this act" (CL 1929, § 8452; amended by PA 1934 [1st Ex Sess], No 15).[3]

This is one of those rare cases where, a determination to overrule having been made, the *facts* are such as render it advisable that the determination apply solely as set forth in the penultimate paragraph of this opinion; otherwise prospectively.[4] In that connection our order of remand of this Siebert Case (entered April 14, 1965) proceeds:

. "It is further ordered, on the Court's own motion, that this cause be remanded to the appeal board of the workmen's compensation department for consideration of the right of claimant's administrator to the award made by the appeal board in behalf of the claimant on August 18, 1964, consideration of the administrator's claim to be made in conjunction with other like cases such as Mazur *v.* Hygrade Food Products Corporation heretofore remanded to the appeal board, and now pending before said appeal board. Upon determination of the administrator's claim by the appeal board, any party hereto may seek appellate review by application for leave to appeal directly to this Court as if such decision had been made on August 18, 1964."

The facts mentioned above are:

As held by the hearing referee October 20, 1962, and affirmed August 18, 1964, by the appeal board,

---

[3] Section 13 is now officially cited as CL 1948, § 413.13 (Stat Ann 1960 Rev § 17.187).

[4] That is what the Court did in the case which overruled the common-law doctrine of imputed negligence (*Bricker* v. *Green,* 313 Mich 218 [163 ALR 697]).

Magnus Larson suffered a compensable injury September 28, 1959. As further held by the referee and appeal board, that injury entitled Magnus to compensation at the continuing rate of $33 per week for total disability; also to payment of all of his statutorily covered medical and hospital expenses. As of the date of Magnus' death the aggregate of these sums amounted to something in excess of $10,000, plus accrued "interest thereon at the rate of 5% per annum from the date each payment was due until paid." We know now that Magnus, aged 66 years and 6 months at the time of injury and aged 71 years and 4–1/2 months at the time of death (August 17, 1964), was entitled month after month and year after year to the benefits which the appeal board awarded posthumously (the day after Magnus deceased). We know, too, that the defendant employer and insurer relied upon no "law" (such as *Stone* v. *Smith* and *Hoffman* v. *Parker Monument Co.*) as they went about the continuity of their denial of liability between September 29, 1960 (date of filing of their "Notice of Dispute"), and the date Magnus died. They did instead rely specifically and solely upon this:

"6. Nature of Dispute—Employee did not receive a personal injury arising out of and in the course of his employment, nor was he disabled because of a personal injury which was due to causes and conditions which were characteristic of and peculiar to the business of the employer and which arose out of and in the course of the employment";

plus claim that Magnus' notice of injury and claim for compensation were not timely.

*Stone* and *Hoffman* should be overruled expressly, but not retroactively as in 5–3 *Mosier* v. *Carney*, 376 Mich 532 and *Autio* v. *Proksch Construction Company*, 377 Mich 517; also that other 5–3 over-

rulement we are studying anew (*People* v. *Holbrook*, 373 Mich 94). The case is ripe for the kind of overrulement for which Justices O'Hara and T. M. Kavanagh stood (without benefit of distinctive facts as above) in *Myers* v. *Genesee County Auditor, supra.* So the spear-pointed question for the remaining retroactivists of the Court is whether they are willing to recede from their successively recorded determinations that, when overrulement is to be voted, the impact must be *nunc pro tunc;* all the way back.

I would overrule *Stone* and *Hoffman* with exclusive prospectivity, subject only to application of such overrulement to the case at bar and other claims including those pending below, or which have been filed since our order of remand in the present case on April 14, 1965, where it is shown that the employee died prior to determination of what he lawfully might have claimed had he continued to live.[5]

Should a majority of the 7 participating Justices disagree with overrulement as thus recommended, then my vote will be cast reluctantly with that of Justice Kelly—to reverse for denial of benefits.

Brennan, J., took no part in the decision of this case.

---

[5] I repeat that there is present here no element of reliance by a litigant or lawyer upon an established rule of law as he goes about preparing his case or defense and consideration of the amount or amounts of settlement offers he has made or his antagonist has made. In all instances of such reliance overrulement should be declared as Justice Cardozo recommended (address of January 22, 1932, *supra,* quoted in *Williams* v. *City of Detroit,* 364 Mich 231, at 282, 283):

"For such cases and others where a retroactive declaration is for any reason inexpedient, I find myself driven more and more to the belief that courts should be competent to follow the practice proposed by Mr. Wigmore in his suggestive little book 'The Problems of Law' and since espoused by others; *they should apply the outworn rule to the case that is then at hand,* and couple their judgment with the declaration that they will feel free to apply another rule to transactions consummated in the future."